ROBERT H. PLATT (Bar No. CA 108533)
rplatt@manatt.com
MARK S. LEE (Bar No. CA 094103)
mlee@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
dbrown@manatt.com
ALEXANDRA N. HILL (Bar No. CA 313249)
ahill@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

Attorneys for *Plaintiff*
TICKETMASTER L.L.C.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER L.L.C., a Virginia limited liability company,<br><br>       Plaintiff,<br><br>      vs.<br><br>PRESTIGE ENTERTAINMENT, INC., a New York corporation, PRESTIGE ENTERTAINMENT WEST, INC., a California corporation, RENAISSANCE VENTURES LLC, a Connecticut limited liability company, NICHOLAS LOMBARDI, STEVEN K. LICHTMAN, and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. CV<br><br>COMPLAINT FOR:<br><br>(1)    BREACH OF CONTRACT;<br>(2-4) COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*)<br>(5-6) VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. § 1201, *et seq.*)<br>(7)    FRAUD<br>(8)    AIDING AND ABETTING FRAUD<br>(9)    INDUCING BREACH OF CONTRACT<br>(10)  INTENTIONAL INTERFERENCE WITH CONTRACT<br>(11)  VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030, *et seq.*)<br>(12)  VIOLATION OF CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT (Cal. Penal Code § 502, *et seq.*)<br>(13)  VIOLATION OF NEW YORK ANTI-SCALPING LAW (N.Y. Arts And Cult. Aff. Law § 25.01, *et seq.*)<br>*Demand for Jury Trial* |

Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following against defendants Prestige Entertainment, Inc., Prestige Entertainment West, Inc., Renaissance Ventures LLC, Nicholas Lombardi, Steven K. Lichtman, and Does 1-10 (collectively, "Defendants"):

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. Section 1331 (federal question jurisdiction), and Section 1367 (supplemental jurisdiction).

2.     Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) and 1400 in that the defendant companies reside in California (*i.e.,* each are subject to this Court's personal jurisdiction based on minimum contacts), a substantial part of the events giving rise to the claims occurred in this judicial district, and Ticketmaster's principal place of business is within this judicial district.    In addition, the Terms of Use ("TOU") that govern the relationship between the parties provide for venue in state or federal court in Los Angeles County for disputes relating to the granting of a conditional license for use of Ticketmaster's website and mobile application, which is the subject of this lawsuit.

## SUMMARY

3.     Ticketmaster sells tickets for entertainment and sports events to the general public on behalf of its clients through a variety of means, including its website, ticketmaster.com, and its mobile applications ("mobile app").  To meet the demands of consumers and its own clients, Ticketmaster strives to provide an equitable ticket distribution system that affords all consumers a fair opportunity to acquire the best available tickets for events.    To that end, the TOU for Ticketmaster's website and mobile app prohibits the use of robots, programs, and other automated devices—generally known and referred to herein from time to time as "bots"—that give users of such devices an unfair advantage in searching for and buying tickets.  These bots, which essentially are software applications, run

1   automated tasks (scripts) over the Internet at a far higher rate than would be
2   possible for a human alone.

3       4.     Ticketmaster's website and mobile app employ a variety of security
4   features, including applications commonly known as CAPTCHA ("Completely
5   Automated Public Turing test to tell Computers and Humans Apart") and splunk,
6   designed to detect bots and to prevent them from accessing the website or mobile
7   app and purchasing tickets in violation of the TOU.  Ticketmaster also assigns
8   several unique identification numbers to each purchaser, which enables
9   Ticketmaster to clearly identify and track irregular (*i.e.*, non-human) customer
10  behavior.  Nonetheless, certain users of the website and mobile app manage to
11  evade those security features and use bots to the detriment of Ticketmaster, its
12  clients, and the general public.

13      5.     Ticketmaster is informed and believes, and on that basis alleges, that
14  defendants Prestige Entertainment, Inc. ("Prestige"), Prestige Entertainment West,
15  Inc. ("Prestige West"), and Renaissance Ventures LLC ("Renaissance"),
16  substantially assisted by defendants Nicholas Lombardi, Steven K. Lichtman, and
17  Does 1-6 (collectively, the "Additional Purchasers"), have been using bots to access
18  and navigate through Ticketmaster's website and mobile app, and through such
19  unlawful use, improperly procure tickets for the purpose of reselling them at a
20  substantial profit.  In doing so, Prestige, Prestige West, Renaissance, and the
21  Additional Purchasers inundate Ticketmaster's website and mobile app with page
22  requests and ticket reserve requests far in excess of amounts permitted under the
23  terms of the TOU.  For example, the defendants purchased tens of thousands of
24  tickets for the New York stage play *Hamilton*—often thirty to forty percent of the
25  entire amount of tickets available for a given performance.  Defendants, by using
26  bots, were also able to procure a majority of the tickets available through
27  Ticketmaster to the high-profile *Mayweather v. Pacquiao* boxing match in Las
28  Vegas in 2015.  As part of this conspiracy to circumvent Ticketmaster's security

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

2

COMPLAINT

measures through the use of bots, Prestige, Prestige West, Renaissance, and the Additional Purchasers surreptitiously attempt to conceal their identities by using a variety of account names, email addresses, physical addresses, Internet Protocol (IP) addresses, and credit cards.  Further, Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, and/or the Additional Purchasers are continuing to use bots to unfairly purchase tickets to Ticketmaster events after publicly representing that it would stop.  In May 2017, Renaissance settled an investigation brought by the New York Attorney General's office by agreeing, *inter alia*, to "abstain from using bots" to purchase tickets. However, Ticketmaster has uncovered evidence that suggests Renaissance has already breached that agreement by continuing to utilize bots to purchase tickets offered by Ticketmaster.

6.     Ticketmaster is also informed and believes, and on that basis alleges, that Does 7-8 assisted Prestige, Prestige West, Renaissance, the Additional Purchasers, and others by creating, marketing and providing bots.  These bots are designed to interact with Ticketmaster's website and mobile app and ultimately, unlawfully purchase tickets.  Does 7-8 likely provided ongoing assistance in the use of such bots in furtherance of the other defendants' unlawful activities.  Although Ticketmaster frequently upgrades its security features, Does 7-8 continue to create or employ new and more sophisticated devices or methods designed to circumvent those newly designed security features.

7.     In addition, Ticketmaster is informed and believes, and on that basis alleges, that Does 9-10 assisted and conspired with Prestige, Prestige West, Renaissance, and the Additional Purchasers by purchasing the tickets that Prestige, Prestige West, Renaissance, and the Additional Purchasers improperly obtained from Ticketmaster.  Does 9-10 knowingly or recklessly disregarded that those tickets had been obtained in violation of Ticketmaster's legal rights.

8.    These deceptive and improper tactics have caused, and continue to cause, harm to Ticketmaster as well as to consumers who rely on Ticketmaster to lawfully purchase tickets through Ticketmaster's website and mobile app.  The use of bots, which can access a website or mobile app and complete tasks far more quickly than human users, deprives legitimate consumers the opportunity to purchase tickets through Ticketmaster.  Furthermore, bots purchase tickets in quantities far in excess of contractual ticket limits, which compounds the problem. The use of bots also circumvents Ticketmaster's technological copy protection systems and results in the improper and unlicensed copying of pages from the website and mobile app.  In addition, the use of bots alters and obfuscates data on the website and mobile app and interferes with the website and mobile apps' operation, increases Ticketmaster's operational costs, deprives Ticketmaster, its clients and its advertisers of various revenue streams, and drives existing and potential clients and customers away from Ticketmaster by making it more difficult for existing and potential customers to lawfully obtain the tickets of their choice through Ticketmaster.

9.    Ticketmaster therefore asserts claims against Defendants for breach of contract, copyright infringement, violation of the federal Digital Millennium Copyright Act, fraud, inducing breach of contract, intentional interference with contract, and violations of the federal Computer Fraud and Abuse Act, California's Computer Data Access and Fraud Act, and New York's Anti-scalping Law.  As relief, Ticketmaster seeks an injunction, compensatory damages, punitive damages, liquidated damages, disgorgement of Defendants' ill-gotten gains, imposition of a constructive trust, and recovery of attorneys' fees and costs incurred by Ticketmaster to prosecute this lawsuit.

## THE PARTIES

10.    Plaintiff Ticketmaster L.L.C. is a Virginia limited liability company with its principal place of business in Los Angeles, California.  The sole member of

Ticketmaster L.L.C. is Live Nation Entertainment, Inc., a Delaware corporation with its principal place of business in Beverly Hills, California.

11.    Ticketmaster is informed and believes, and on that basis alleges, that defendant Prestige Entertainment, Inc. is a company incorporated in New York with its principal place of business in Connecticut.

12.    Ticketmaster is informed and believes, and on that basis alleges, that defendant Prestige Entertainment West, Inc. is a company incorporated in California with its principal place of business in California.

13.    Ticketmaster is informed and believes, and on that basis alleges, that defendant Renaissance Ventures is a limited liability company organized under the laws of the State of Connecticut with its principal place of business in Connecticut.

14.    Ticketmaster is informed and believes, and on that basis alleges, that defendant Nick Lombardi is an individual who resides in Connecticut.

15.    Ticketmaster is informed and believes, and on that basis alleges, that defendant Steven K. Lichtman is an individual who resides in Florida.

16.    The true names, residences and capacities, whether individual, corporate or otherwise, of defendants Does 1 through 10 are unknown to Ticketmaster, and Ticketmaster therefore sues those defendants under such fictitious names.  Ticketmaster is informed and believes, and on that basis alleges, that each defendant was, and is, an agent and employee of the remaining defendants, and in doing the things alleged herein, was acting within the course and scope of such agency and employment and with the knowledge, consent and approval of the other defendants.  Ticketmaster is informed and believes, and on that basis alleges, that each defendant is responsible in some manner for the acts alleged herein and for the damages that Ticketmaster has sustained.  Ticketmaster

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

5

COMPLAINT

1   will further amend this Complaint to show the true names and capacities of Does 1-
2   10 when such names and identities are ascertained.[1]

3       17.   Ticketmaster is informed and believes, and on that basis alleges, that at
4   all times mentioned herein, each defendant conspired with, acted in concert and
5   active participation with, and aided and abetted every other defendant in
6   committing the wrongful acts alleged in this Complaint.  Ticketmaster is further
7   informed and believes, and on that basis alleges, that each of the defendants knew,
8   or consciously avoided knowing, that the other defendants were engaged or
9   intended to engage in conduct that violated Ticketmaster's rights and also violated
10  federal, California, and New York law.

11                                          **FACTS**

12  **A.    Ticketmaster Endeavors To Make Its Ticketing System As Fair And
13         Equitable As Possible For Consumers.**

14      18.   Ticketmaster distributes tickets for live entertainment events to the
15  general public on behalf of its clients, who are venues, promoters, entertainers and
16  sports franchises.   Ticketmaster sells tickets via telephone call centers,
17  Ticketmaster's website, www.ticketmaster.com, and its mobile app.  Ticketmaster
18  spends substantial time, energy and resources attempting to ensure that its website
19  and mobile app are current, accurate, and easy to use for the benefit of its clients
20  and the public.

21      19.   Demand for tickets sold through Ticketmaster, including via
22  ticketmaster.com and the mobile app, often exceeds the supply of tickets available
23  for purchase.  Because Ticketmaster may only sell tickets that its clients release to
24  Ticketmaster for sale, Ticketmaster cannot expand or adjust the supply of tickets to
25  meet the demand.  Moreover, Ticketmaster's clients generally set the price of the
26  tickets sold through Ticketmaster and oftentimes set prices at below market rates.

27  _____
    [1]    Rule 19-1 of the Local Rules of the Central District of California imposes a
28  limit of ten Doe defendants.  Ticketmaster will seek leave to add defendants if the
    current number the number of Doe defendants turns out to be insufficient.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1                                6                           COMPLAINT

These factors can inspire intense competition among consumers to purchase tickets for events the moment that such tickets become available for sale on ticketmaster.com and the mobile app.

20.   Recognizing the reality of this ultra-competitive marketplace to acquire tickets, Ticketmaster has undertaken various measures to make the ticket buying process as fair and equitable as possible for consumers.  For example, Ticketmaster attempts to regulate the speed with which users may copy the pages necessary to search for, reserve, and purchase tickets on ticketmaster.com and the mobile app.  At its clients' request, Ticketmaster also limits the number of tickets that may be purchased in any single transaction or to a specific event.

21.   In addition, Ticketmaster undertakes substantial measures intended to prevent the use of computer programs or other automated devices—as noted previously, generally known as "bots"—that give users of such devices an unfair advantage over human consumers in the ticket purchasing process.  One of those measures is a security computer program, commonly known as CAPTCHA, that is designed to distinguish between human users and bots.  When a user submits a ticket request, a box appears on the screen with random characters partially obscured behind hash marks.  The user must retype these characters in order to proceed with the ticket request.

22.   Another security measure is known as "splunk."  Ticketmaster creates unique identifiers for ticket purchasers based on a purchaser's account information, computer location, payment details, and other identifiers.  Splunk tracks and compiles some of this data to help determine whether purchases are being made through the use of bots and other violations of the TOU (*e.g.*, too many ticket requests from one purchaser).

23.   Through these and other measures, Ticketmaster expends substantial resources on its web and mobile-based infrastructure in an effort to make the ticket purchasing process fair for consumers.

**B.**  **Use Of Ticketmaster's Website and Mobile App Is Conditioned on Contractual Terms Of Use.**

24.  Permission to view and use ticketmaster.com and Ticketmaster's mobile app is, and at all relevant times has been, conditioned on the users' agreement to the TOU as set forth on the website and mobile app.  (A copy of Ticketmaster's current TOU is attached hereto as Exhibit "A.")

25.  To ensure that users are aware of and consent to the TOU, the Ticketmaster website and mobile app repeatedly and systematically alert users to the existence—and the content—of the TOU.  For example, at all relevant times, the home page for ticketmaster.com has stated that, by continuing past the home page, users consent to the TOU for the website.  The phrase "Terms of Use" in that statement on the home page is, and has been at all relevant times, a readily visible hypertext link to the TOU itself.  When clicked, the full TOU appears on the user's screen.  The same message and related hyperlink to the TOU appears on almost every webpage on the website.  Similarly, Ticketmaster's mobile app alerts users to the TOU throughout the ticketing process.  To search for tickets or "otherwise us[e]" the mobile app, a user must consent to the TOU.  Users can access the TOU at any point during their use of the mobile app by tapping on an icon at the bottom right of the screen or simply swiping right.  Thus, at all relevant times, users have been repeatedly reminded that use of the website and mobile platform is governed by the TOU, and that continuing to use the website or mobile app with that knowledge constitutes acceptance of the TOU, including all of its terms.

26.  Furthermore, to purchase tickets through ticketmaster.com or the mobile app, users have always been required to set up an account with Ticketmaster, and in doing so, users have been instructed to review and agree to the TOU as a condition for using the website or mobile app.  At all relevant times, it has been necessary as part of the account set-up procedure on the website for the user to expressly consent to the TOU by clicking a button labeled "Accept and

Continue."  (A copy of the current version of the webpage with the "Accept and Continue" button as part of the account set-up procedure is attached hereto as Exhibit "B.")  The mobile app places the TOU disclaimer directly below the button labeled "Create Account" or "Create An Account."  (A copy of the current version of the mobile app with the TOU disclaimer is attached hereto as Exhibit "C.")  Because a consumer must create an account to purchase tickets, a user must encounter this particular TOU disclaimer.

27.    In addition, to complete a ticket purchase on the website, users must click a "Submit Order" button at the bottom of a Payment page.  The "Submit Order" button is located directly adjacent to a statement that provides, "[b]y continuing past this page, you agree to our Terms of Use," and embedded in this statement is a hyperlink that, when clicked, causes the TOU to appear on the user's screen.  (A copy of the current version of the Payment webpage with the "Submit Order" button as part of the ticket purchase procedure is attached hereto as Exhibit "D.")

**C.**    **The TOU Grants a Limited License to View and Use the Website and Mobile App and Prohibits Abusive Use of these Sites.**

28.    Ticketmaster's website (and mobile app) are works of authorship protected by copyright law.  *See Ticketmaster L.L.C. v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096, 1104-11 (C.D. Cal. 2007).  Ticketmaster (or its predecessors) have registered or applied to register versions of its website, mobile app, or portions thereof, with the Copyright Office.  These copyright applications and registrations include the following:

| Website/App Program | Registration No. | App./Reg. Date |
|---|---|---|
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |

| | | |
|---|---|---|
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |
| Ticketmaster Interactive Seat Map Version 2012 | TX-7-628-432 | January 25, 2013 |
| Ticketmaster Android Platform (2011) | [Pending] | June 27, 2017 |
| Ticketmaster Android Platform (2012) | [Pending] | June 27, 2017 |
| Ticketmaster Android Platform (2013) | [Pending] | June 27, 2017 |
| Ticketmaster Android Platform (2014) | [Pending] | June 27, 2017 |
| Ticketmaster Android Platform (2015) | [Pending] | June 27, 2017 |
| Ticketmaster Android Platform (2016) | [Pending] | June 27, 2017 |
| Ticketmaster Android Platform (2017) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2010) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2011) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2012) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2013) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2014) | [Pending] | June 27, 2017 |

| | | |
|---|---|---|
| Ticketmaster iOS Platform (2015) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2016) | [Pending] | June 27, 2017 |
| Ticketmaster iOS Platform (2017) | [Pending] | June 27, 2017 |
| Ticketmaster Website Ticket Purchase  (2017) | [Pending] | June 27, 2017 |

29.    As described above, users who wish to purchase tickets through ticketmaster.com or the mobile app must navigate through a series of pages by clicking (or in the case of mobile phones and tablets, tapping) on designated hypertext links on those pages.  Viewing Ticketmaster's homepage and clicking (or tapping) on the hyperlinks to reach the various other pages that must be viewed to purchase tickets from the website or mobile app causes copies of each of those pages to be created and to appear on a user's computer, phone or tablet.

30.    The TOU (Ex. A hereto) states up front that "[t]he following are the terms of use ('Terms') that govern your use of the Ticketmaster sites and applications where this appears (collectively, the 'Site')."  The current version of the TOU includes a section called Ownership of Content and Grant of Conditional License.  That section states in part as follows:

> The Site and all data, text, designs, pages, print screens, images, artwork, photographs, audio and video clips, and HTML code, source code, or software that reside or are viewable or otherwise discoverable on the Site, and all tickets obtained from the Site, (collectively, the "Content") are owned by us or our licensors. We own a copyright and, in many instances, patents and other intellectual property in the Site and Content. We may change the Content and features of the Site at any time.
>
> We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes

only if, as a condition precedent, you agree that you will not:

. . . :

- Modify, adapt, sub-license, translate, sell, reverse engineer, decompile or disassemble any portion of the Site or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of the Content;
- Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool, or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Content or the Site, including with respect to any CAPTCHA displayed on the Site. . . .;
- Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, discount codes (including Ticketmaster ticket cash™ and tm ticket cash™), promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or system is active;
- Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
- Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval;
- Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals;
- Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals;
- Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;
- Reproduce or scan tickets in a format or medium different from that provided by the Site;
- Decode, decrypt, modify, or reverse engineer any tickets or underlying algorithms or barcodes used on or in production of tickets or the Site;
- Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose.

31.     That section of the TOU further states as follows:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

12

COMPLAINT

This license is expressly conditioned on your preexisting agreement to comply with, and your actual compliance with, each of the provisions described in this Ownership of Content and Grant of Conditional License section. This license exists only so long as you strictly comply with each of the provisions described in this section. Any use of the Site or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site and Content, and infringes our copyrights, trademarks, patents and other rights in the Site and Content. You will not acquire any ownership rights by using the Site or the Content.

32.    Thus, any use of the website or mobile app that violates any of the various prohibitions in the TOU—for example, using robots, spiders and other automated devices to improperly navigate the website or mobile app and request, reserve and purchase tickets, making any other attempts to circumvent technological measures intended to protect the website and mobile app, and making excessive page and reserve requests—exceeds the scope of the user's limited copyright license. Ticketmaster has revised the TOU from time to time; however, for at least the past fourteen years, every version of the TOU contained substantially similar prohibitions on the use of bots, and prohibited other abusive use of the website, as well as the mobile app when it became relevant.

33.    The TOU also contains a "Code of Conduct" section that requires a user to "comply with all applicable laws, rules and regulations." In relevant part, a user may not:

. . .
- Restrict or inhibit any other person from using the Site
- Use the Site for any unlawful purpose
- Order a number of tickets for an event that exceeds the stated limit for that event
- Use any password or code to participate in a presale or other offer on the Site if you did not receive the password or code from us or if you violate the terms of the presale or offer;
- Use any area of the Site for commercial purposes, such as to conduct sales of tickets, products or services

34.     The TOU further contains a "Making Purchases" section that reads, in relevant part: "You may not attempt to conceal your identity by using multiple Internet Protocol addresses or email addresses to conduct transactions on the Site."

35.     The TOU contains a "Mobile Device Application" section that reads, in relevant part:

> If you install or use our mobile application, software and services, including any accompanying documentation (collectively, "App"), we grant you a limited right to install and use the App on a single authorized device located in the United States and its territories or in another country where we may offer the App. You may use the App for your personal, non-commercial and entertainment purposes only.

36.     The TOU limits the number of tickets that a user may purchase for an event in the Code of Conduct (above) and in the Purchase Policy.  At all relevant times, the TOU contained a hyperlink to, and expressly incorporated, Ticketmaster's Purchase Policy.  The hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible in the first paragraph of the TOU.  Clicking (or tapping) on the "Purchase Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

37.     The current version of the Purchase Policy includes a section called Number of Tickets or "Ticket Limits."  That section states in part as follows:

> When purchasing tickets on our Site, you are limited to a specified number of tickets for each event (also known as a "ticket limit").  This ticket limit is posted during the purchase process and is verified with every transaction. This policy is in effect to discourage unfair ticket buying practices.

38.     Previous versions of the Purchase Policy on both the website and mobile app contained a substantially similar provision.

39.     In sum, at all relevant times, the TOU, including the Purchase Policy, prohibited users from, among other things, using bots to access and navigate the site and conduct transactions, abusing the Ticketmaster system with excessive

1    requests for web pages, including reserve requests, and purchasing tickets in excess

2    of the ticket limit.

3    **D.      Defendants Have Been Systematically Misusing And Abusing
          Ticketmaster's Website and Mobile App.**

4

5         40.    Based on information that Ticketmaster recently discovered, compiled

6    and analyzed, Ticketmaster is informed and believes, and on that basis alleges, that

7    for at least the past two years, Prestige, Prestige West, and Renaissance, with the

8    assistance of others, have been using bots to navigate through ticketmaster.com and

9    the Ticketmaster mobile app to unlawfully purchase large quantities of tickets.

10        41.    Based on this same investigation, Ticketmaster is informed and

11   believes, and on that basis alleges, that a substantial number of ticket purchases

12   involving defendants and the use of bots have been made in the name of the

13   Additional Purchasers (as defined in Paragraph 5 above).   For example, a

14   substantial volume of ticket purchases that implicate the use of bots was made

15   through accounts in the name of the Additional Purchasers that are linked to email

16   addresses with the domain names @prestigeent.com and @1 Sound Shore (Prestige

17   and Renaissance's business address).   The Additional Purchasers either (i) used

18   bots to make purchases themselves, or (ii) knowingly allowed Prestige, Prestige

19   West, Renaissance, and others to use their identities, credit and debit cards, and

20   Ticketmaster accounts to make such purchases, but under either circumstance the

21   Additional Purchasers would be liable.

22        42.    User accounts serve as a form of password protection against

23   unauthorized access to Ticketmaster's information and tickets.   When creating an

24   account, a user must create a password that is necessary for future access to the

25   account.   Each time a user creates or later uses an account and password, the user

26   agrees, *inter alia*, to comply with the TOU to gain access to some of Ticketmaster's

27   event information and ticket buying capability.   Prestige, Prestige West,

28   Renaissance, and the Additional Purchaser abuse this password protection system

by creating and using dummy accounts and passwords, thereby compromising the equity of the ticketing system, violating the TOU, and exceeding the scope of the license granted by the TOU. Therefore, Prestige, Prestige West, Renaissance, and the Additional Purchasers' access to the Ticketmaster website and mobile app is without authorization.

43. While the tactics used by Prestige, Prestige West, and Renaissance, with the assistance of the Additional Purchasers and others, have evolved over time, Ticketmaster is informed and believes, and on that basis alleges, that tactics recently employed by Prestige, Prestige West, and Renaissance have included the rental of high speed bandwidth and storage from colocation facilities in conjunction with various techniques intended to obfuscate the attacker's identity. Third-party colocation facilities provide space, power, cooling, and physical security for servers, storage, and networking equipment of various firms. Once a firm drops off content at a colocation facility, the content can be connected to a variety of telecommunications and network service providers. Colocation facilities are not themselves Internet service providers ("ISPs"), but rather provide users of the facilities with fast internet speeds by allowing them to bypass much of the traditional Internet infrastructure provided by an ISP.

44. Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, and Renaissance used at least five colocation facilities, with minimal costs, to store their bots and gain access to high speed bandwidth that is unavailable to the average ticket purchaser. For example, a majority of the tickets available on Ticketmaster's platforms for the *Mayweather v. Pacquiao* boxing match were bought and traced back to five colocation providers: Desert Cloud LLC, Nth Air, NSI Hosting, Mac MINI Colos, and Galaxy Internet. Using the names, addresses, and email addresses given at the account creation phase, Ticketmaster traced the ticket purchases made though these five colocation providers to Prestige, Prestige West, Renaissance, and the Additional Purchasers.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

16

COMPLAINT

45.     Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, and Renaissance also launch thousands of concurrent and recurring reserve requests for tickets for specific events.  When a reserve request is made, the Ticketmaster system will temporarily set aside tickets matching the request, to give the user time to complete the purchase of the tickets.  In the normal course, the Ticketmaster system will release such tickets from reserve if the purchase is not completed within a set time, thereby making them available to other purchasers.  However, defendants, by using bots to regenerate reserve requests at a speed that legitimate consumers honoring the TOU cannot match, simply grab the same—or similar—tickets again and thus continue to place large quantities of tickets on temporary reserve while deciding which tickets, and how many, to purchase.  When deployed during the first sale for a popular event, this practice of making rapid, excessive, and repeated reserve requests creates a severe artificial shortage of tickets available to satisfy reserve requests by legitimate consumers.

46.     Throughout that time, these defendants repeatedly and systematically requested and copied more than 1000 pages of the website and mobile app in applicable 24-hour periods, made more than 800 reserve requests in applicable 24-hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable 3-second intervals.  This conduct placed, and continues to place, a heavy load on Ticketmaster's infrastructure, and far exceeds the scope of the license granted by the TOU.

47.     Ticketmaster is informed and believes, and on that basis alleges, that many of defendants' ticket purchases involved ticket quantities far in excess of stated ticket limits, and that most if not all of these wrongfully acquired tickets were purchased for the commercial purpose of reselling them for a profit through various means, including, for example, through StubHub.com and other ticket resale sites.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

17

COMPLAINT

48.     Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, and Additional Purchasers' bots utilized random number and letter generators to improperly gain access to events (*e.g.*, pre-sales) that required special codes generally granted only to preferred Ticketmaster customers.   These defendants also likely used these random number and letters generators to mirror and defeat Ticketmaster's own internal practice of assigning unique identification numbers to users.   Such unlawful practices allowed these defendants to hide their identities; Ticketmaster's internal system could not differentiate between its own numbers and the fake numbers generated by defendants' bots.   These practices violate the TOU.

49.     Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, and the Additional Purchasers re-sold tickets bought from Ticketmaster's website and mobile app.   This conduct required these defendants to reproduce the tickets in a new medium, which is another violation of the TOU.

50.     Throughout the course of their misconduct, Prestige, Prestige West, Renaissance, and the Additional Purchasers had ample opportunity to review Ticketmaster's TOU, and each of them repeatedly assented to those terms, expressly and impliedly.   Ticketmaster is informed and believes, and on that basis alleges, that these defendants not only expressly assented to the TOU when creating various online accounts, but the defendants regularly visited, or oversaw other persons in visiting, the website and mobile app.   During each of these visits, defendants have been repeatedly reminded of the TOU and have been invited to review them.   For example, from January to August 2016, accounts tied to Prestige, Prestige West, Renaissance, and Additional Purchasers visited or "hit" the Ticketmaster mobile app around six million times.   Thus, defendants have likely had millions of opportunities to view the TOU, that they agreed to, with every ticket purchase.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

18

COMPLAINT

51.    Throughout this course of misconduct, Prestige, Prestige West, Renaissance, and the Additional Purchasers attempted to evade Ticketmaster's efforts to prevent the use of bots.  Although many bots cannot decipher and retype the random characters or images generated by the CAPTCHA security program utilized on ticketmaster.com, and thus cannot proceed past that screen to complete a ticket transaction, some bots are designed to circumvent CAPTCHA while others are built to present the CAPTCHA to a remote human at a "CAPTCHA farm" to complete the challenge.  Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, and the Additional Purchasers used (or substantially assisted in the use of) such devices or methods for at least the past two years.

52.    The Ticketmaster system is designed to detect the presence of a bot. In these cases, the system may block the attacker at different places in the technology stack and may generate further messages and warnings to the user explaining that the use of such devices is prohibited.  If detected, the attacker is not allowed to continue.  Ticketmaster is informed and believes, and on that basis alleges, that its system likely generated such messages in response to bots used by Prestige, Prestige West, Renaissance, and the Additional Purchasers.  However, those defendants ignored these messages, and instead continued to unlawfully use bots to navigate through the Ticketmaster website and mobile app and wrongfully acquire tickets.

53.    The Ticketmaster system is also designed to disallow the progress of a bot when such a device is detected.  Ticketmaster is informed and believes, and on that basis alleges, that Ticketmaster's system disabled bots used by Prestige, Prestige West, Renaissance, and the Additional Purchasers.  However, Ticketmaster is informed and believes, and on that basis alleges, that in each such instance, defendants simply deployed a new bot from a different application server,

colocation facility, and/or IP address, or other mechanism, effectively continuing their unauthorized use of the Ticketmaster system.

54.     Ticketmaster diligently attempts to identify and stop the users of bots, but some bot-users go to great lengths to deceive Ticketmaster.  Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, and the Additional Purchasers used many different names, credit cards, IP addresses, and email addresses to purchase tickets from Ticketmaster.  In addition, Ticketmaster is informed and believes, and on that basis alleges, that these same defendants systematically removed data from the computers they use to access ticketmaster.com, such as by cleaning out the "cookies" on the computers. This conduct hinders Ticketmaster's ability to identify repeat visitors to the site.

55.     Thus, it was not until recently that Ticketmaster was able to fully understand the breadth of the harm caused by Defendants' conduct.  Ticketmaster noticed unusual bot activity almost two years ago during the *Mayweather-Pacquiao* ticket sale, which Ticketmaster was able to trace to Prestige.  Since that time, Ticketmaster expended significant resources to identify other purchases by Prestige, Prestige West, Renaissance, and Additional Defendants that involved the use of bots, and has now assembled the information necessary to link Prestige, Prestige West, Renaissance, and the Additional Purchasers to hundreds of thousands of ticket purchases involving the use of bots.  Ticketmaster's records show that, from January 2015 through September 2016, Prestige, Prestige West, and Renaissance, with assistance from some, if not all, of the Additional Purchasers, made at least 313,528 orders using 9,047 different accounts.   Each of these orders harmed Ticketmaster and inhibited human consumers from using and enjoying the benefits of Ticketmaster's ticket purchasing platform.

E.     **Defendants Ignored Ticketmaster's Cease and Desist Letter.**

56.     After tracing the bot-related ticket purchases for the *Mayweather-Pacquiao* boxing match to Prestige, Ticketmaster sent a cease and desist letter in

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

20

COMPLAINT

May 2015 to defendant Nicholas Lombardi at Prestige.  The letter described some of the evidence that linked Prestige to the improper ticket purchases and outlined violations of Ticketmaster's TOU.   The letter also noted a violation of Ticketmaster's Purchase Policy, which limits the number of tickets a user may purchase for a particular event.  The letter closed by demanding that Mr. Lombardi, Prestige, "and any other companies or individuals under [their] direction or control cease and desist from any further violations of Ticketmaster's rights."  (A copy of the May 2015 cease and desist letter is attached hereto as Exhibit "E.")

57.    Mr. Lombardi acknowledged receipt of the cease and desist letter, but Defendants' injurious conduct nevertheless continued.  For example, Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, and Additional Purchasers used bots and colocation servers to purchase approximately 30,000 tickets to the New York stage play, *Hamilton*, after receipt of Ticketmaster's cease and desist letter.  Defendants often bought between thirty and forty percent of Ticketmaster's available inventory of tickets for particular shows of *Hamilton*.  Prestige, Prestige West, Renaissance, and Additional Purchasers' unauthorized access of Ticketmaster's website and mobile app forced Ticketmaster to expend additional resources, including increasing its security measures to identify and prevent these defendants from continuing to purchase large volumes of tickets using bots.

F.    **Defendants Have Violated State Laws and an Agreement with the New York Attorney General.**

58.    The use of bots and other software to circumvent security measures on a ticket retail platform violates California and New York law.  *See, e.g.*, Cal. Bus. & Prof. Code § 22505.5; Cal. Penal Code § 502; N.Y. Arts and Cult. Aff. Law § 25.24.   Ticketmaster's TOU requires users to comply with all applicable laws. Accordingly, Defendants' use of bots to purchase tickets on Ticketmaster's website

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

21

COMPLAINT

1   and mobile app breached the TOU because Defendants acted contrary to applicable

2   state law.

3       59.    In May 2017, Renaissance agreed to pay $3.35 million as part of a

4   settlement with the New York Attorney General based on its illegal use of bots to

5   buy large quantities of tickets to New York events for re-sale to the public.   The

6   New York Attorney General's office posted the following press release regarding

7   Renaissance's bot use:

8           Attorney General Schneiderman's investigation found that
            Prestige Entertainment ran one of the largest ticket purchasing
9           and reselling operations in the United States. Prestige
            Entertainment used at least two different bots and thousands of
10          credit cards and Ticketmaster accounts to purchase tickets to
            New York shows. Prestige Entertainment also bought IP
11          addresses from online IP proxy services to evade detection of
            its bots by retail ticket marketplaces such as Ticketmaster.com.
12          Prestige Entertainment used all of its illegal advantages to
            great effect, purchasing huge quantities of tickets to popular
13          shows.

14      60.    In addition to the substantial payment, Renaissance agreed to

15  "abstain from using bots" to purchase tickets for New York events.    Yet

16  Ticketmaster is informed and believes, and on that basis alleges, that Renaissance

17  continues to use bots to buy tickets to New York events after the announcement of

18  that settlement, thereby violating its settlement agreement with the state of New

19  York.

20  **G.    Does 7-10 Have Facilitated the Misconduct of the Other Defendants.**

21      61.    Does 7-8 facilitated the misconduct of Prestige, Prestige West,

22  Renaissance, and the Additional Purchasers.    Ticketmaster is informed and

23  believes, and on that basis alleges, that for at least the past two years, defendants

24  Does 7-8 developed, marketed and sold software applications that enable users like

25  these defendants to employ bots to unlawfully and improperly access

26  Ticketmaster's website and mobile app in order to quickly purchase large quantities

27  of tickets in violation of the TOU.    These bots are designed to, and do, circumvent

28  CAPTCHA and other security measures on Ticketmaster's website and mobile app.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

22

COMPLAINT

62.     Ticketmaster is informed and believes, and on that basis alleges, that Does 7-8 visited ticketmaster.com and Ticketmaster's mobile app to develop these computer programs; thus, Does 7-8 repeatedly visited the Ticketmaster homepage, Ticketmaster mobile app, and ticket purchase pages, which repeatedly reminded Does 7-8 of the governing TOU.  Ticketmaster is also informed and believes, and on that basis alleges, that Does 7-8 purchased tickets on ticketmaster.com when testing their computer programs, and thus clicked on the "Accept and Continue" button on the ticket purchase page with each purchase.  Ticketmaster is also informed and believes, and on that basis alleges, that Does 7-8 also purchased tickets on Ticketmaster's mobile app and therefore, consented to the TOU when creating an account and searching for tickets.  Each and every viewing of the ticketmaster.com homepage and purchase page, as well as views on the mobile app's ticket search page, caused a copy of the pages containing a TOU disclaimer to be copied on defendants' computers, phones or tablets.

63.     Does 9-10 further facilitated the misconduct of Prestige, Prestige West, Renaissance, and the Additional Purchasers by purchasing tickets from the defendants.  Does 9-10 knew or recklessly disregarded that Prestige, Prestige West, Renaissance, and the Additional Purchasers acquired tickets in violation of the TOU and Ticketmaster's rights.   In that regard, Ticketmaster is informed and believes, and on that basis alleges, that defendants Does 9-10 visited Ticketmaster's website and mobile app themselves and purchased tickets on the site; thus, Does 9-10 had ample opportunity to review Ticketmaster's TOU and assented to its terms, expressly as well as impliedly.  Does 9-10 knew or recklessly disregarded that Prestige, Prestige West, Renaissance, and the Additional Purchasers violate the same TOU to obtain the tickets that sell to Does 9-10.  When Does 9-10 resell the same tickets to consumers for a profit, they further violate the TOU.  Does 9-10 induce and actively encourage Prestige, Prestige West, Renaissance, and the Additional Purchasers to obtain tickets in violation of Ticketmaster's rights.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

23

COMPLAINT

64.   To the extent that Does 9-10 reproduced the tickets acquired from Prestige, Prestige West, Renaissance, and the Additional Purchasers for their own commercial purposes, Does 9-10 violated the TOU on that basis as well.

## H.   Defendants' Misuse And Abuse Has Harmed Ticketmaster's Website, Mobile App And Operations.

65.   Ticketmaster has been harmed, and continues to be harmed, by the use of bots by Prestige, Prestige West, Renaissance, the Additional Purchasers, Does 7-8, and others.   To meet the demands of consumers and its own clients, Ticketmaster must provide an equitable ticket distribution system that affords all consumers a fair opportunity to acquire the best available tickets for events.   The use of bots undermines this effort, because bots can navigate through Ticketmaster's website and mobile app and reserve and purchase tickets at a speed that legitimate consumers cannot match.   For example, Ticketmaster is informed and believes, and on that basis alleges that, in the first minute of a particular *Hamilton* sale, Defendants completed 11 orders; by the end of the second minute, Defendants completed 49 more orders.   The inventory of tickets available to consumers who do not use bots is substantially diminished, which has led some consumers to question Ticketmaster's ability to ensure a level playing field for the purchase of tickets.

66.   Bots inundate the Ticketmaster system with thousands of ticket requests.   By causing an excessive number of tickets to be placed temporarily on reserve, defendants not only diminish the inventory of tickets available for legitimate consumers, but impede Ticketmaster's or its clients ability to properly monitor ticket sales.   Ticket sales influence a variety of decisions, including whether to open more seats for sale to the public, or to move the unsold tickets to other distribution channels.   The artificially high volume of tickets revolving in and out of reserve status due to bot activity makes it difficult for Ticketmaster's clients to gauge how well tickets for an event are actually selling.   Moreover, clients are unable to determine the best time to offer tickets for sale.   Ticketmaster is informed

1  and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance,
2  and the Additional Purchasers repeatedly and improperly extend the duration of
3  reserve requests, which exacerbates the problems described above.

4       67.    Users of bots also deprive Ticketmaster of revenue and revenue
5  opportunities.  For example, Ticketmaster's website is part of a carefully crafted
6  business model that integrates other services and features into the ticket purchasing
7  process.  Ticketmaster designed its website and mobile app so that users will follow
8  certain steps.  In other words, users will view predetermined pages in the process of
9  requesting and purchasing tickets.   Based on this expected flow of traffic,
10  Ticketmaster places advertisements on its website for various services, such as
11  event parking and insurance, in an effort to increase revenue.  Bots do not use
12  traditional browsers and bypass the HTML code for these features; as a result, bot
13  users may never view these offers.  Furthermore, bots purchase enormous quantities
14  of tickets, which reduces the number of legitimate consumers who will reach these
15  up-sell pages.

16       68.    Bots can alter the behavior of security features of the website and
17  mobile app themselves.   Normally, users receive automatic and temporary
18  permission—in effect, a token—to make requests on the system.  That token is
19  automatically revoked if the pace of requests exceeds a certain speed or limit.
20  However, by systematically deleting cookies on the user's system, bots enable the
21  user to constantly assume a new identity and acquire new tokens even though that
22  same user is far exceeding the stated request limit.

23       69.    All of these problems involve, in one way or another, unauthorized
24  reproduction and alteration of the Ticketmaster system, as well as deletion,
25  destruction and alteration of data on the system.

26       70.    Equally important, the use of bots diverts resources from the service of
27  legitimate consumers. Ticketmaster must incorporate extraordinary actions to
28  enhance the website and mobile app infrastructure to enable it to support all

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

25

COMPLAINT

1   consumer activity, including the artificial and inflated activity generated by bots.

2   The use of these bots also significantly increases the costs of, among other things,

3   data storage, computer processing, troubleshooting and system maintenance.

4       71.     Defendants' unauthorized access of Ticketmaster's website and mobile

5   app forced Ticketmaster to continually increase its security measures to identify and

6   prevent these defendants from their ongoing scheme to purchase tickets using bots.

7   Ticketmaster engineers began tracking Prestige, Prestige West, Renaissance, and

8   Additional Purchasers' use of the Ticketmaster website and mobile app in order to

9   assess the damage and respond accordingly.  Ticketmaster has canceled as many

10  orders obtained by Prestige, Prestige West, and Renaissance bots as possible, in

11  accordance with the TOU; however, the cancellation led to delayed profits and a

12  diversion of company resources.  Ticketmaster has spent thousands of dollars

13  analyzing, investigating, and responding to Defendants' actions.

**FIRST CLAIM FOR RELIEF**
**Breach Of Contract**
**(Against Prestige, Prestige West, Renaissance, the Additional Purchasers, and Does 7-8)**

17      72.     Ticketmaster alleges and incorporates by reference all of the preceding

18  paragraphs.

19      73.     At all relevant times, the home page and most other pages on

20  ticketmaster.com informed users that their use of the ticketing service is subject to

21  express terms and conditions set forth in the TOU, and that by continuing past the

22  page in question, the user expressly and/or impliedly agrees to be bound by terms

23  of the TOU.  The mobile app also repeatedly alerts users to the TOU.  Users have a

24  reasonable opportunity to review the TOU upon first entering the website or mobile

25  app, and they also have a reasonable opportunity to review the TOU during their

26  use of the site or mobile app.  The link to the TOU is displayed in such a manner as

27  to provide consumers with clear notice of the existence of the TOU.

28

74.   Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, Renaissance, the Additional Purchasers, and Does 7-8, acting for themselves and for each other, expressly assented to the TOU when creating accounts on ticketmaster.com and the mobile app, as well as when the defendants submitted requests to purchase tickets.

75.   The TOU prohibits, among other things, the use of bots, abusive use of the website and mobile app, and exceeding ticket limits.   The provisions of the TOU are fair and reasonable.

76.   Ticketmaster performed all conditions, covenants and promises required to be performed by it in accordance with the TOU.

77.   Based on information that Ticketmaster recently discovered and compiled, Ticketmaster is informed and believes, and on that basis alleges, that for at least the past two years, Prestige, Prestige West, and Renaissance, by use of technology manufactured or otherwise provided by Does 7-8 (themselves also bound by the Terms of Use), repeatedly and systematically breached the TOU by using bots to access the website and mobile app and buy tickets, by buying tickets in quantities that exceed ticket limits, and by violating California and New York law in the process.

78.   Ticketmaster is further informed and believes, and on that basis alleges, that the Additional Purchasers (all of whom are bound by the TOU) breached the TOU either by allowing Prestige, Prestige West, Renaissance, and others to use their identities, credit and debit cards, and Ticketmaster accounts to purchase tickets by the use of bots and in quantities that exceed ticket limits, or by using bots themselves to the same end.

79.   Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, and Renaissance, along with the Additional Purchasers and Does 7-8 (directly or in concert with Prestige, Prestige West, and Renaissance), repeatedly and systematically placed an excessive load on Ticketmaster's system by

requesting more than 1000 pages of the website in applicable 24-hour periods, making more than 800 reserve requests in applicable 24-hour periods, and accessing, reloading or refreshing transactional events or ticketing pages and making other requests to transactional servers more than once during applicable 3-second intervals.

80.    Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, and Renaissance, along with the Additional Purchasers and Does 7-8 (directly or in concert with Prestige, Prestige West, and Renaissance), further violated the TOU by restricting other customers' use of the site through their abusive conduct, using number and letter generators to gain access to events, and buying and reproducing tickets for a commercial purpose.

81.    It can be impracticable and extremely difficult to ascertain the damages from abusive use of Ticketmaster's website and mobile app.  Therefore, Ticketmaster made a reasonable attempt to calculate damages caused by abusive use of its website and mobile app.  The current version of the TOU contains the following liquidated damages provision that includes this formula:

> You agree that your abusive use of the Site may cause damage and harm to us, including impaired goodwill, lost sales and increased expenses. You also agree that monetary damages for your abusive use of the Site are difficult to determine and that if you, or others acting with you, request more than 1,000 pages of the Site or make more than 800 reserve requests on the Site in any 24-hour period, you, and those acting with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) for each page request or reserve request made during that 24-hour period which exceeds those limits.

82.    Previous versions of the TOU included a substantially identical liquidated damages provision.  For example, the immediately prior version stated as follows:

> You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

28

COMPLAINT

increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) per page request each time that a page request is made after that first 1000 during that twenty-four hour period.  You also agree that this will be the measure of damages for any abusive use that occurred prior to this provision of these Terms being in effect.

83.   Ticketmaster is entitled to liquidated damages in accordance with the foregoing provisions, in an amount to proven at trial when the full extent of these defendants' page requests and reserve requests is ascertained.   In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for (i) abusive conduct that falls outside the scope of the liquidated damages provision, and (ii) as an alternative to liquidated damages should the liquidated damages provision be unenforceable for any reason.

84.   The TOU also provides that Ticketmaster is entitled to injunctive relief to enjoin violations of the TOU.  The current version of the TOU provides in part as follows: "You agree that monetary damages may not provide us a sufficient remedy and that we may pursue injunctive or other relief for your violation of these Terms." Previous versions of the TOU contained a substantially similar, if not identical, provision.

85.   The conduct of Prestige, Prestige West, Renaissance, the Additional Purchasers, and Does 7-8 significantly and irreparably damaged Ticketmaster and will continue to harm Ticketmaster unless restrained by this Court.   Thus, in addition to liquidated damages and other damages for abusive use of its website and mobile app, Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed for in this Complaint.

## SECOND CLAIM FOR RELIEF
### Copyright Infringement, 17 U.S.C. § 101 *et seq.*
**(Against Prestige, Prestige West, Renaissance, and the Additional Purchasers)**

86.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

87.     Ticketmaster owns valid U.S. Copyright registrations in its website and mobile app and specific portions thereof.

88.     In using bots on the ticketmaster.com website and mobile app to acquire tickets for the commercial purpose of reselling them, Prestige, Prestige West, Renaissance, and the Additional Purchasers acted in excess of the terms of the license agreement created by Ticketmaster's TOU, compliance with which is a condition precedent to that license.  Specifically, these defendants copied or caused to be copied without authorization pages from the ticketmaster.com site and other original elements of Ticketmaster's copyrighted website and mobile app.

89.     Ticketmaster is informed and believes, and on that basis alleges, that the Additional Purchasers induced and materially contributed to the infringing activities of Prestige, Prestige West, Renaissance, and others, knowing of and directly benefiting from that infringing activity.

90.     As a proximate result of this direct, contributory, and vicarious copyright infringement, and the inducement of others to infringe Ticketmaster's copyrights by copying pages from ticketmaster.com in excess of the license created by its TOU, Ticketmaster suffered and continues to suffer significant damage and irreparable harm in an amount to be proven at trial.

91.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 502-505, including injunctive relief, an order for the impounding and destruction of all copies of all bots used by these defendants to violate Ticketmaster's rights, compensatory damages in an amount to be determined, statutory damages, and its costs and attorneys' fees.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

30

COMPLAINT

### THIRD CLAIM FOR RELIEF
### Copyright Infringement, 17 U.S.C. § 101 *et seq.*
### (Against Does 7-8)

92.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

93.     Ticketmaster owns valid U.S. Copyright registrations in its website and specific portions thereof.

94.     In creating, providing, and using bots on the ticketmaster.com website and mobile app to acquire tickets for the commercial purpose of reselling them, Does 7-8 acted in excess of the terms of the license agreement created by Ticketmaster's TOU, compliance with which is a condition precedent to use of that license.  Specifically, without authorization, these defendants copied, caused to be copied, and induced the copying of pages from the ticketmaster.com website and mobile app.  Ticketmaster is informed and believes, and on that basis alleges, that these defendants had the right and ability to supervise the infringing activities of their customers, and induced and materially contributed to the infringing activities of their customers while knowing of and directly benefiting from that infringing activity.

95.     As a proximate result of this direct, contributory, and vicarious copyright infringement by Does 7-8 and their inducement of others to infringe Ticketmaster's copyrights by copying pages from ticketmaster.com and the mobile app in excess of the TOU, Ticketmaster suffered and continues to suffer significant damage and irreparable harm in an amount to be proven at trial.

96.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 502-505, including injunctive relief, an order for the impounding and destruction of all copies of all bots used by these defendants to violate Ticketmaster's rights, compensatory damages in an amount to be determined, statutory damages, and its costs and attorneys' fees.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

31

COMPLAINT

## FOURTH CLAIM FOR RELIEF
### Copyright Infringement, 17 U.S.C. § 101 *et seq.*
### (Against Does 9-10)

97.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

98.     Ticketmaster owns valid U.S. Copyright registrations in its website and specific portions thereof.

99.     By purchasing and reproducing tickets from Prestige, Prestige West, Renaissance, and Additional Purchasers, for the commercial purpose of reselling such tickets, Does 9-10 acted in breach of the terms of the license agreement created by Ticketmaster's TOU, compliance with which is a condition precedent to that license.   Specifically, these defendants copied, caused to be copied, and induced the copying without authorization of the ticket pages from the ticketmaster.com website and mobile app.  Ticketmaster is informed and believes, and on that basis alleges, that these defendants induced and materially contributed to the infringing activities of the other defendants while knowing of and directly benefiting from that infringing activity.

100.  As a proximate result of this direct and contributory copyright infringement by Does 9-10, and their inducement of others to infringe Ticketmaster's copyrights by copying pages from ticketmaster.com and the mobile app in excess of its TOU, Ticketmaster suffered and continues to suffer significant damage and irreparable harm in an amount to be proven at trial.

101.  Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 502-505, including injunctive relief, an order for the impounding and destruction of all copies of all bots, programs, or other automatic devices used by these defendants to violate Ticketmaster's rights, compensatory damages in an amount to be determined, statutory damages, and its costs and attorneys' fees.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

32

COMPLAINT

1

2

**FIFTH CLAIM FOR RELIEF**
**Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.***
**(Against Prestige, Prestige West, Renaissance, and the Additional Purchasers)**

3

4

102.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

5

6

7

8

9

10

11

12

103.   Ticketmaster is informed and believes, and on that basis alleges, that Prestige, Prestige West, and Renaissance were and are using bots, programs, or other technology, products, services, devices, components, or parts thereof, that are and were primarily designed and produced to circumvent the technological measures that Ticketmaster used to effectively control access to its copyrighted website and mobile app.   The Additional Purchasers are either using the same devices or are actively participating in Prestige, Prestige West, and Renaissance's use of those devices.

13

14

15

16

17

104.   Ticketmaster is informed and believes, and on that basis alleges, that these bots, programs, or other technical devices have no commercially significant purpose or use other than to circumvent the technological measures that Ticketmaster uses to control access to its website and mobile app, and that these defendants are using those devices with knowledge of that improper purpose.

18

19

20

105.   As a proximate result of these defendants' above-referenced misconduct, Ticketmaster suffered and continues to suffer significant damage in an amount to be proven at trial.

21

22

23

106.   Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

24

25

**SIXTH CLAIM FOR RELIEF**
**Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.***
**(Against Does 7-8)**

26

27

107.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

33

COMPLAINT

108.   Ticketmaster is informed and believes, and on that basis alleges, that Does 7-8 are manufacturing, importing, trafficking in and using bots, programs, or other technology, products, services, devices, components, or parts thereof, that are primarily and intentionally designed and produced to circumvent the technological measures that Ticketmaster uses to effectively control access to its copyrighted website and mobile app.

109.   Ticketmaster is informed and believes, and on that basis alleges, that these bots, programs, or other technical devices have no commercially significant purpose or use other than to circumvent the technological measures that Ticketmaster uses to control access to its website and mobile app, and that these defendants are creating, marketing, trafficking in and using those devices with knowledge that they are being used for that purpose.

110.   As a proximate result of these defendants' actions, Ticketmaster suffered significant damages in an amount to be proven at trial.

111.   Ticketmaster is entitled to the range of relief provided by 17 U.S.C. Sections 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Fraud
**(Against Prestige, Prestige West, Renaissance, the Additional Purchasers, and Does 7-8)**

112.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

113.   Defendants Prestige, Prestige West, Renaissance, the Additional Purchasers, and Does 7-8 repeatedly accessed Ticketmaster's website and mobile app.  By doing so, these defendants represented to Ticketmaster that they would comply with the TOU, including refraining from the use bots, abuse the website or mobile app, and excessive ticket purchases.

114.   Ticketmaster is informed and believes, and on that basis alleges, that these defendants, acting for themselves and for each other, clicked the "Accept and Continue" button on Ticketmaster's website (or "Create Account" or "Create An Account" adjacent to a TOU disclaimer on Ticketmaster's mobile app) when setting up online accounts and when completing ticket purchases, thereby representing to Ticketmaster that they would comply with the TOU for the website and mobile app, and thus that they would not, among other things, use bots, abuse the website or mobile app, or exceed ticket limits.

115.   Each and every such representation in Paragraph 113 was false. Ticketmaster is informed and believes, and on that basis alleges, that every time these defendants accessed and used the website or mobile app, and every time they clicked or tapped the Accept and Continue, Create Account, or Submit Order button, they intended to, and did, violate the TOU and that each such instance by these defendants was also done on behalf of each other.

116.   Moreover, Ticketmaster is informed and believes, and on that basis alleges, that every time each of these defendants accessed and used Ticketmaster's website or mobile app, they concealed from Ticketmaster their true intent to violate the TOU.

117.   Ticketmaster is informed and believes, and on that basis alleges, that these defendants misrepresented and hid their identities when interacting with the Ticketmaster website and mobile app.

118.   Ticketmaster relied on each such representation and omission by providing the information and services available on the website and mobile app to these defendants, which included selling them substantial quantities of tickets.

119.   Ticketmaster's reliance was reasonable.   These defendants received ample notice of the TOU every time they accessed and used the website and mobile app.  It was necessary for them to click the Accept and Continue button both when setting up online accounts and when completing a ticket purchase on the website.

The defendants also saw TOU disclaimers if they created an account or searched for tickets on the mobile platform.

120.   As a result of these defendants' fraudulent representations and omissions, Ticketmaster sold defendants tickets that Ticketmaster otherwise could have sold to legitimate users of the site.

121.   Moreover, Does 7-8, through their fraudulent representations and omissions, obtained information about the workings and architecture of Ticketmaster's website and mobile app.  They also used Ticketmaster's website and mobile platform to design and test their prohibited devices, which others then used to defraud Ticketmaster.

122.   As a proximate result of this fraudulent misconduct, Ticketmaster has been damaged in an amount to be proven at trial.

123.   Ticketmaster is informed and believes that Prestige, Prestige West, Renaissance, the Additional Purchasers, and Does 7-8 intended to injure Ticketmaster or willfully and consciously disregarded Ticketmaster's rights.  The defendants' conduct constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294.  As a result, Ticketmaster is entitled to an award of punitive damages against these defendants in an amount sufficient to deter them from future misconduct.

### EIGHTH CLAIM FOR RELIEF
#### Aiding and Abetting Fraud
**(Against the Additional Purchasers and Does 7-8)**

124.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

125.   Insofar as the Additional Purchasers did not use bots to access Ticketmaster's website and mobile app but instead lent their accounts, identities, and/or credit and debit cards to Prestige, Prestige West, Renaissance, and others with actual knowledge that Prestige, Prestige West, Renaissance, and others would use them to help carry out their own fraudulent conduct toward Ticketmaster, the

1  Additional Purchasers aided and abetted this fraud by Prestige, Prestige West,

2  Renaissance, and others.

3      126.   Does 7-8, in turn, aided and abetted all of the fraudulent misconduct

4  alleged above, in that they had actual knowledge that their customers were

5  acquiring their products and services for the purpose of defrauding Ticketmaster,

6  and they provided substantial assistance to those customers, including Prestige,

7  Prestige West, and Renaissance, for this purpose by providing their products and

8  services and counseling their customers how to exploit the Ticketmaster system.

9      127.   Thus, the Additional Purchasers and Does 7-8 are liable for all of the

10  damages and harm that Ticketmaster incurred by reason of the fraudulent

11  misconduct of Prestige, Prestige West, Renaissance, and others.

12      128.   Ticketmaster is informed and believes that the Additional Purchasers

13  and Does 7-8 intended to injure Ticketmaster or willfully and consciously

14  disregarded Ticketmaster's rights.  The defendants' conduct constitutes clear and

15  convincing evidence of oppression, fraud and malice under California Civil Code

16  Section 3294.  As a result, Ticketmaster is entitled to an award of punitive damages

17  against these defendants in an amount sufficient to deter them from future

18  misconduct.

19          **NINTH CLAIM FOR RELIEF**
            **Inducing Breach of Contract**

20          **(Against Does 7-10)**

21      129.   Ticketmaster alleges and incorporates by reference all of the preceding

22  paragraphs.

23      130.   At all relevant times, the home page and most other pages on

24  ticketmaster.com informed users that their use of the website is subject to express

25  terms and conditions set forth in the TOU, and that by continuing past the page in

26  question, they expressly and/or impliedly agree to be bound by those terms.  Users

27  have a reasonable opportunity to review the TOU upon first entering the website,

28  and they also have a reasonable opportunity to review the TOU during their use of

1   the site.   The link to the TOU is displayed in such a manner as to provide

2   consumers with notice of the TOU's existence.   Similarly, the mobile app contains

3   links to the TOU when a user creates an account or searches for tickets.

4         131.   Ticketmaster is informed and believes, and on that basis alleges, that

5   Does 7-10 expressly assented to the TOU when setting up accounts on

6   ticketmaster.com or the mobile app and when submitting a request to purchase

7   tickets. Thus, Ticketmaster is informed and believes that Does 7-10 repeatedly

8   provided their express assent to the TOU.

9         132.   The TOU prohibits, among other things, the use of bots, abusive use of

10   the website and mobile app, and exceeding ticket limits.   These terms of the TOU

11   are fair and reasonable.

12         133.   Ticketmaster performed all conditions, covenants and promises

13   required under the TOU.

14         134.   Prestige, Prestige West, Renaissance, and the Additional Purchasers

15   repeatedly and systematically breached the TOU by using, individually or

16   collectively, bots to access the website and mobile app and buy tickets, and by

17   buying tickets in quantities that exceed the stated ticket limits.   Ticketmaster is

18   informed and believes that, as part of this misuse of Ticketmaster's website and

19   mobile app, Prestige, Prestige West, Renaissance, and the Additional Purchasers

20   repeatedly and systematically requested more than 1000 pages of Ticketmaster's

21   website or mobile app in applicable 24-hour periods, made more than 800 reserve

22   requests in applicable 24-hour periods, and accessed, reloaded or refreshed

23   transactional events or ticketing pages and made other requests to transactional

24   servers more than once during applicable 3-second intervals.

25         135.   Does 7-8 knew of the TOU and that the TOU constitutes an agreement

26   between Ticketmaster and customers of Does 7-8, including Prestige, Prestige

27   West, Renaissance, and the Additional Purchasers.   Moreover, Does 7-8 intended to

28   cause their customers, including Prestige, Prestige West, Renaissance, and the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

38

COMPLAINT

1  Additional Purchasers, to breach those agreements, or acted in reckless disregard as

2  to whether they were causing those customers to breach their agreements with

3  Ticketmaster.

4      136.  The conduct of Does 7-8 caused their customers, including Prestige,

5  Prestige West, Renaissance, and the Additional Purchasers, to breach their contracts

6  with Ticketmaster.  In fact, the bots provided by Does 7-8 were the means by which

7  Prestige, Prestige West, Renaissance, and the Additional Purchasers did in fact

8  breach their contracts with Ticketmaster.

9      137.  Does 9-10 also knew of the TOU and that the TOU constitutes an

10  agreement between Ticketmaster and Prestige, Prestige West, Renaissance, and the

11  Additional Purchasers.   Does 9-10 intended to cause Prestige, Prestige West,

12  Renaissance, and the Additional Purchasers to breach those agreements by offering

13  to purchase tickets from Prestige, Prestige West, Renaissance, and the Additional

14  Purchasers while knowing or recklessly disregarding that Prestige, Prestige West,

15  Renaissance, and the Additional Purchasers would procure those tickets from

16  Ticketmaster in a manner that violates the TOU.

17      138.  The conduct of Does 9-10 caused Prestige, Prestige West,

18  Renaissance, and the Additional Purchasers to breach their contracts with

19  Ticketmaster.

20      139.  Ticketmaster has been harmed as a result, and the conduct of Does 7-

21  10 was a substantial factor in causing such harm.  The TOU contains a liquidated

22  damages provision described in detail above.

23      140.  Ticketmaster is entitled to liquidated damages from Does 7-10 in

24  accordance with that provision, in an amount to proven at trial when the full extent

25  of the requests for pages on Ticketmaster's website and mobile app by Prestige,

26  Prestige West, Renaissance, and the Additional Purchasers is ascertained.   In

27  addition, Ticketmaster is entitled to compensatory damages, in an amount to be

28  proven at trial, for (i) abusive conduct that falls outside the scope of the liquidated

1   damages provision, and (ii) as an alternative to liquidated damages should the
2   liquidated damages provision be unenforceable for any reason.

3       141.   Ticketmaster is informed and believes that Does 7-10 intended to
4   injure Ticketmaster or willfully and consciously disregarded Ticketmaster's rights.
5   The defendants' conduct constitutes clear and convincing evidence of oppression,
6   fraud and malice under California Civil Code Section 3294.   As a result,
7   Ticketmaster is entitled to an award of punitive damages against these defendants in
8   an amount sufficient to deter them from future misconduct.

### TENTH CLAIM FOR RELIEF
### Intentional Interference with Contractual Relations
### (Against Does 7-10)

11      142.   Ticketmaster alleges and incorporates by reference all of the preceding
12  paragraphs.

13      143.   As alleged above, Prestige, Prestige West, Renaissance, and the
14  Additional Purchasers were bound by the TOU on Ticketmaster's website and
15  mobile app and at all relevant times Does 7-10 were aware that Prestige, Prestige
16  West, Renaissance, and the Additional Purchasers were bound by the TOU.
17  Moreover, at all relevant times, Does 7-10 were aware of the content of the TOU.

18      144.   The TOU prohibits, among other things, the use of bots, abusive use of
19  the website or mobile app, and exceeding ticket limits.   These terms of the TOU are
20  fair and reasonable.

21      145.   Ticketmaster performed all conditions, covenants and promises
22  required to be performed by it in accordance with the TOU.

23      146.   By marketing and selling bots to circumvent Ticketmaster's security
24  devices and providing tools and assistance to their customers to enable them to
25  inundate Ticketmaster's website and mobile app with requests and excess ticket
26  purchases, Does 7-8 intended to disrupt the performance of the contracts between
27  Ticketmaster and Prestige, Prestige West, Renaissance, and the Additional

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

40

COMPLAINT

1   Purchasers, or acted in reckless disregard as to whether they would disrupt the
2   performance of those contracts.

3   147.  By offering to purchase tickets from Prestige, Prestige West,
4   Renaissance, and the Additional Purchasers, Does 9-10 intended to disrupt the
5   performance of the contracts between Ticketmaster and Prestige, Prestige West,
6   Renaissance, and the Additional Purchasers, or acted in reckless disregard as to
7   whether they would disrupt the performance of those contracts because Does 9-10
8   knew Prestige, Prestige West, Renaissance, and the Additional Purchasers would
9   procure tickets from Ticketmaster in a manner that would violate the TOU.

10   148.  Prestige, Prestige West, Renaissance, and the Additional Purchasers
11   repeatedly and systematically breached the TOU as alleged in Paragraphs 40-55.
12   For example, these defendants used, or cooperated in the use of, bots to access the
13   website and mobile app to buy tickets, and purchased tickets in quantities that
14   exceed ticket limits.   Ticketmaster is informed and believes, and on that basis
15   alleges, that as part of this misuse of Ticketmaster's website and mobile app,
16   Prestige, Prestige West, Renaissance, and the Additional Purchasers repeatedly and
17   systematically requested more than 1000 pages of Ticketmaster's website or mobile
18   app in applicable 24-hour periods, made more than 800 reserve requests in
19   applicable 24-hour periods, and accessed, reloaded or refreshed transactional events
20   or ticketing pages and made other requests to transactional servers more than once
21   during applicable 3-second intervals.

22   149.  The conduct of Does 7-10 made it substantially more difficult and
23   expensive for Ticketmaster to perform under those contracts.  As alleged in more
24   detail in Paragraphs 40-55 above, these violations damaged Ticketmaster by,
25   among other things, diminishing the inventory of tickets available through
26   Ticketmaster to legitimate consumers, causing artificially high levels of tickets to
27   be placed on reserve and thereby interfering with the transmission of real time sales
28   information to Ticketmaster's clients, bypassing required website or mobile app

entry and exit points, which directly and indirectly reduces integral revenue opportunities, altering website and mobile app security features through manipulation of request limit monitoring, requiring Ticketmaster to undertake extraordinary actions to monitor and enhance website and mobile app infrastructure, and significantly increasing costs of data storage, computer processing, troubleshooting and system maintenance.   Thus, the conduct of Does 7-10 was a substantial factor in causing harm to Ticketmaster.

150.   The TOU contains a liquidated damages provision described in detail above.   Ticketmaster is entitled to liquidated damages from Does 7-10 in accordance with such liquidated damages provision, in an amount to proven at trial, when the full extent of the requests for pages on Ticketmaster's website and mobile platform by Prestige, Prestige West, Renaissance, and the Additional Purchasers is ascertained.   In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for (i) abusive conduct that falls outside the scope of the liquidated damages provision, and (ii) as an alternative to liquidated damages should the liquidated damages provision be unenforceable for any reason.

151.   Ticketmaster is informed and believes that Does 7-10 intended to injure Ticketmaster or willfully and consciously disregarded Ticketmaster's rights. The defendants' conduct constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294.   As a result, Ticketmaster is entitled to an award of punitive damages against these defendants in an amount sufficient to deter them from future misconduct.

### ELEVENTH CLAIM FOR RELIEF
**Violation Of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*
(Against Prestige, Prestige West, Renaissance, Additional Purchasers, and
Does 7-8)**

152.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

319298020.1

42

COMPLAINT

153.   Ticketmaster's computers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. Section 1030(e)(2).

154.   Ticketmaster is informed and believes and on that basis alleges, that Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 knowingly and intentionally accessed Ticketmaster's computers without authorization or in excess of authorization as defined by Ticketmaster's TOU and the May 2015 cease and desist letter.

155.   Ticketmaster is informed and believes and on that basis alleges, that Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 obtained valuable information from Ticketmaster's ticketing systems, including but not limited to information on Ticketmaster's security measures and ticketing practices, and used that information to purchase tickets to resell at a profit.

156.   Defendants' conduct caused Ticketmaster a loss of over $5000 in a one-year period.  Among other things described in more detail in Paragraphs 40-55, Ticketmaster conducted several damage assessments, designed new security features, and diverted resources to combat defendants' unauthorized use of Ticketmaster's website and mobile platform.

157.   As a proximate result of these defendants' wrongful conduct, Ticketmaster suffered and continues to suffer significant damage and irreparable harm.  Therefore, Ticketmaster is entitled to an award of compensatory damages under 18 U.S.C. Section 1030(g).

### TWELFTH CLAIM FOR RELIEF
### Violation Of Computer Data Access and Fraud Act, Cal. Penal Code § 502 *et seq.*
### (Against Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8)

158.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

1    159.   Ticketmaster is informed and believes and on that basis alleges, that
2    Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 have
3    knowingly and without permission altered, damaged, deleted, destroyed, or
4    otherwise used data from Ticketmaster's computer system in order to (i) execute a
5    scheme or artifice to defraud and deceive Ticketmaster, and (ii) wrongfully obtain
6    data and property, both in violation of California Penal Code Section 502(c)(1).

7    160.   Ticketmaster is informed and believes and on that basis alleges, that
8    Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 have
9    knowingly and without permission taken, copied, and made use of Ticketmaster's
10   tickets and other data, in violation of California Penal Code Section 502(c)(2).

11   161.   Ticketmaster is informed and believes and on that basis alleges, that
12   Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 have
13   knowingly caused Ticketmaster's computer services to be used without permission,
14   in violation of California Penal Code Section 502(c)(3).

15   162.   Ticketmaster is informed and believes and on that basis alleges, that
16   Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 have
17   knowingly and without permission altered, damaged, deleted, or destroyed data on
18   Ticketmaster's internal and external computer system, in violation of California
19   Penal Code Section 502(c)(4).

20   163.   Ticketmaster is informed and believes and on that basis alleges, that
21   Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 have
22   knowingly and without permission disrupted or caused the disruption and denial of
23   computer services to authorized, human users of Ticketmaster's computer system,
24   in violation of California Penal Code Section 502(c)(5).

25   164.   Ticketmaster is informed and believes and on that basis alleges, that
26   Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 have
27   knowingly and without permission provided, or assisted in providing, a means of

28

1   accessing Ticketmaster's website, in violation of California Penal Code Section
2   502(c)(6).

3       165.   Ticketmaster is informed and believes and on that basis alleges, that
4   Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8
5   knowingly accessed Ticketmaster's website in violation of the Terms of Use and
6   thus without permission, in violation of California Penal Code Section 502(c)(7).

7       166.   Ticketmaster is informed and believes and on that basis alleges, that
8   Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8 gained
9   knowledge of their improper access of Ticketmaster's computer system by, among
10  other things, creating Ticketmaster accounts, using Ticketmaster accounts, and
11  receiving a cease and desist letter in May 2015.

12      167.   Ticketmaster is informed and believes and on that basis alleges, that
13  Prestige, Prestige West, Renaissance, Additional Purchasers, and Does 7-8
14  improperly obtained and sold tickets, in violation of California Penal Code Section
15  502, by breaching or acting in excess of the TOU and circumventing Ticketmaster's
16  website and mobile app's security measures, among other things.

17      168.   As a direct and proximate result of defendants' unlawful conduct
18  within the meaning of California Penal Code Section 502, defendants damaged
19  Ticketmaster by, among other things more thoroughly detailed in paragraphs 40-55,
20  diminishing the inventory of tickets available through Ticketmaster to legitimate
21  consumers, requiring Ticketmaster to take extraordinary actions to monitor its
22  website, and increasing the costs of data storage.

23      169.   Pursuant to California Penal Code Section 502(e), Ticketmaster is
24  entitled to an injunction, compensatory damages, attorneys' fees, and other
25  equitable relief as prayed for in this Complaint.

26      170.   Defendants have acted with oppression, fraud and malice toward
27  Ticketmaster, entitling Ticketmaster to an award of punitive damages in an amount
28  sufficient to deter them from future misconduct.

1
2

### THIRTEENTH CLAIM FOR RELIEF
### Violation Of Anti-scalping Law, N.Y. Arts & Cult. Aff. Law § 25.01 *et seq.*
### (Against Prestige, Prestige West and Renaissance)

3
4

171.   Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

5
6
7
8
9
10
11
12
13

172.   Ticketmaster is informed and believes and on that basis alleges, that Prestige, Prestige West, and Renaissance used bots to access the Ticketmaster website and mobile app, bypass security measures and buy retail tickets to live entertainment events in New York.  For example, accounts traceable to Prestige, Prestige West, and Renaissance purchased tens of thousands of tickets to the New York stage play, *Hamilton*, using bots that intentionally bypassed Ticketmaster's security measures.  Ticketmaster is informed and believes and on that basis alleges, that Prestige, Prestige West, and Renaissance improperly acquired tickets to many live events in New York.

14
15
16
17
18

173.   Ticketmaster is informed and believes that Prestige, Prestige West, and Renaissance intentionally maintained and controlled bots at colocation facilities and on other servers, or knowingly used bots maintained and controlled by Additional Purchasers or Does 7-8 to improperly purchase tickets from Ticketmaster's website and mobile app.

19
20
21
22
23

174.   As a proximate result of Prestige, Prestige West, and Renaissance's wrongful conduct, Ticketmaster suffered and continues to suffer significant damage and irreparable harm.  As a result, Ticketmaster is entitled to an award of up to three times its actual damages to be proven at trial, an injunction, and reasonable attorney's fees and costs.

24

### PRAYER FOR RELIEF

25

WHEREFORE, Ticketmaster respectfully requests that the Court:

26

1.   Enjoin all Defendants from:

27
28

a.   infringing   or   assisting   any   other   person   in   infringing Ticketmaster's rights in its copyrighted ticketmaster.com website and mobile app

1  works as set forth herein by copying pages from that website or mobile app in
2  excess of the scope of the license granted by Ticketmaster's Terms of Use;

3  b. manufacturing, adapting, modifying, exchanging, distributing,
4  creating, importing, trafficking in, or using any bots, programs or other technology,
5  products, services, devices, components, or parts thereof to circumvent the
6  technological measures by which Ticketmaster controls access to its website and
7  mobile app;

8  c. accessing, visiting, purchasing tickets on, facilitating the
9  purchase of tickets on, or otherwise using ticketmaster.com or Ticketmaster's
10  mobile app for any purpose that is in excess of the agreement formed by the Terms
11  of Use by which users are permitted to visit that website and mobile app;

12  d. using, or causing, urging or assisting any other person to use,
13  bots to access Ticketmaster's website or mobile app;

14  e. using, or causing, urging or assisting any other person to use,
15  any program that is designed to circumvent security measures such as CAPTCHA
16  and splunk to attempt to access Ticketmaster's website and mobile app;

17  f. designing, selling or marketing any program or device that is
18  designed to provide an automated means of accessing Ticketmaster's website or
19  mobile app or that is designed to circumvent security measures such as CAPTCHA
20  and splunk on Ticketmaster's website and mobile app;

21  g. soliciting the design, purchase, sale or use of any program or
22  device that is designed to provide an automated means of accessing Ticketmaster's
23  website or mobile app or that is designed to circumvent security measures such as
24  CAPTCHA or splunk on Ticketmaster's website or mobile app;

25  h. purchasing, selling, transferring or acquiring any program or
26  device that is designed to provide an automated means of accessing Ticketmaster's
27  website or mobile app or that is designed to circumvent security measures such as
28  CAPTCHA or splunk on Ticketmaster's website or mobile app;

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

47

COMPLAINT

1            i.        abusing Ticketmaster's website or mobile app in any way, such

2    as exceeding limits in the Terms of Use for requesting web pages and making

3    requests to transactional servers more than once during any three-second interval;

4            j.       purchasing tickets in excess of ticket limits; and

5            k.     reselling any tickets obtained through Ticketmaster that were

6    not obtained legitimately in accordance with the Terms of Use;

7        2.     Order that Defendants be required to:

8            a.     account for, hold in constructive trust, pay over to Ticketmaster,

9    and otherwise disgorge all profits derived by Defendants from their individual and

10   collective misconduct as alleged herein; and

11         b.     pay to Ticketmaster the costs of this action, together with

12   reasonable attorneys' fees and disbursements, in accordance with federal and

13   California law, including but not limited to 17 U.S.C. Sections 505 and 1203;

14        3.     Award to Ticketmaster liquidated, compensatory, statutory and

15   punitive damages; and

16        4.     Award to Ticketmaster all further relief, as the Court deems just and

17   equitable.

18

19   Dated:  October 2, 2017           MANATT, PHELPS & PHILLIPS, LLP

20                             ROBERT H. PLATT
                                MARK S. LEE

21                             DONALD R. BROWN
                              ALEXANDRA N. HILL

22

23                     By:  *Robert H. Platt*

24                          Robert H. Platt
                              Attorneys for *Plaintiff*

25                             TICKETMASTER L.L.C.

26

27

28

1

## JURY DEMAND

Ticketmaster demands a jury trial in this action.

Dated:  October 2, 2017

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT
MARK S. LEE
DONALD R. BROWN
ALEXANDRA N. HILL


By:  *Robert H. Platt*
      Robert H. Platt
      Attorneys for *Plaintiff*
      TICKETMASTER L.L.C.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

319298020.1

49

COMPLAINT